David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*GRETTA MARSHALL*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| | : |
| GRETTA MARSHALL, | : Civil Action No.: _____ |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| THE CBE GROUP, INC. D/B/A CBE | : **COMPLAINT** |
| GROUP, | : |
| | : |
| Defendant. | : |

For this Complaint, the Plaintiff, GRETTA MARSHALL, by undersigned

counsel, states as follows:

## **JURISDICTION**

1.     This action arises out of Defendant's repeated violations of the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the

harassment of Plaintiff by the Defendant and its agents in their illegal efforts to

collect a consumer debt and jurisdiction is therefore proper in this Court pursuant

to 28 U.S.C. § 1331.

2.      Further, Defendant negligently, knowingly, and/or willfully placed automated calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA and state law claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

4.      This action is also brought under Nevada Revised Statutes Chapter 598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.* ("NRS 41.600") for Defendant's deceptive trade practices as further described herein.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

6.      The Plaintiff, GRETTA MARSHALL ("Plaintiff" or "Mrs. Marshall"), is an adult individual residing in Las Vegas, Nevada, and is a

"consumer" as the term is defined by 15 U.S.C. § 1692a(3).

7.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

8.     Defendant THE CBE GROUP, INC. D/B/A CBE GROUP  ("CBE"), is doing business in the State of Nevada as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

9.     Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

10.    CBE at all times acted by and through one or more of its debt collectors or other agents (the "Collectors").

<u>ALLEGATIONS APPLICABLE TO ALL COUNTS</u>

<u>The Debt</u>

11.    Plaintiff allegedly incurred a financial obligation (the "Debt") to a creditor (the "Creditor"), which CBE sought to collect.

12.    The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

13.    The Debt was purchased, assigned or transferred to CBE for collection, or CBE was employed by the Creditor to collect the Debt.

14.     The Defendant attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

## CBE Engages in Illegal Collection Tactics

## FACTS

15.     Plaintiff began to receive harassing phone calls from CBE on or before August 10, 2015.

16.     CBE called the Plaintiff up to four times a day nearly every single day upon commencing its collection efforts.  CBE's calls were often spaced one to three hours apart on any given day.

17.     CBE called Plaintiff hundreds of times between August 10, 2015 and December 9, 2015.

18.     When CBE called, CBE repeatedly asked to speak to a person who was not the Plaintiff, and Plaintiff repeatedly explained to CBE that it was calling the wrong number and asking for the wrong person and demanded the calls cease, since she was not the proper party responsible for the Debt CBE was seeking to collect.

19.     However, CBE repeatedly ignored the Plaintiff and continued its collection efforts by calling the Plaintiff in an effort to collect a debt that Plaintiff explained had nothing to do with her for months after Plaintiff informed CBE that it was collecting from the wrong person.  This lawsuit results.

## **Plaintiff Suffered Actual Damages**

20.     The Plaintiff has suffered and continues to suffer actual damages as a result of CBE's unlawful conduct.

21.     As a direct consequence of Defendant's acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal collection calls.

22.     Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which the Plaintiff is charged a fee.

## **Respondeat Superior Liability**

23.     The acts and omissions of CBE, and the other debt collectors employed as agents by CBE who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant CBE.

24.     The acts and omissions by CBE and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by CBE in collecting consumer debts.

25.     By committing these acts and omissions against Plaintiff, CBE and

these other debt collectors were motivated to benefit their principal, Defendant CBE.

26.     CBE is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Nevada tort law, in their attempts to collect a debt from Plaintiff.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

27.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

28.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

29.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)     to dial such numbers.

30.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

31.     According to findings by the Federal Communications Commission

("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls.[1]

32.    On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

33.    On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

34.    Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

35.     Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent.  *Id*. at ¶ 58.

36.     Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

37.     Consumers have a right to revoke consent, using any reasonable method including orally or in writing.  *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

38.     Within the four years prior to filing the instant complaint, the Plaintiff received numerous calls from the Defendant from the following phone number: (977) 224-6529.

39.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

40.     In the calls that Plaintiff did answer, there would be a short pause lasting about two to three seconds between the time the calls were answered and the time that a live agent introduced themselves as a representative from CBE.

41.     Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, CBE used a predictive dialing system to place calls to Plaintiff.

42.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

43.     The FCC has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

44.     Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

45.     Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "6717" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

46.     On numerous occasions after the CBE calls commenced (all within the last 4 years), Plaintiff instructed CBE or its agent(s) not to call the Plaintiff's cell

phone ever again thereby revoking consent, if any ever existed (which it didn't), to be contacted by Defendant via an ATDS.

47.     Moreover, CBE did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

48.     However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

49.     Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

50.     The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

51.     Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

52.     Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

53.     The Plaintiff suffered actual harm and loss, since the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative

effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

54.     Plaintiff also suffered from an invasion of a legally protected interest by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from this precise behavior.

55.     Plaintiff has a common law right to privacy.  *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

56.     Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the Plaintiff's phone line without any consent to do so.

57.     The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

### Violations of the FDCPA
### (15.S.C. § 1692 *et seq.*)

58.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59.     "The plain language of the [FDCPA] demonstrates that it is directed

to the protection of 'any person' and not just consumers", which includes the wrong called party Plaintiff herein. 15 U.S.C. § 1692k(a); *see also Weinberg v. Arcventures, Inc.*, 96 C 556, 1996 WL 385951 (N.D. Ill.)

60.     Here, CBE's conduct violated 15 U.S.C. § 1692d  in that CBE engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.  Specifically, engaging in a relentless phone call campaign notwithstanding it's knowledge that it was collecting the Debt from a wrong party.

61.     CBE's conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused the Plaintiff's phone to ring and/or engaged the Plaintiff in telephone conversations repeatedly or continuously with the intent to annoy, abuse or harass the Plaintiff in connection with the collection of a debt.  In specific, Defendant placed numerous harassing and annoying phone calls to the Plaintiff from (at least) August 10, 2015 through December 9, 2015 – often multiple times per day to collect a debt the Plaintiff didn't owe despite her efforts advising CBE as much.

62.     The Defendant's conduct violated 15 U.S.C. § 1692f in that Defendant used unfair and unconscionable means to collect a debt and attempted to humiliate and belittle Plaintiff.

63.     The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the FDCPA, including every one of the above-

cited provisions.

64.     The Plaintiff is entitled to damages as a result of Defendant's violations.

65.     The Plaintiff has been required to retain the undersigned as counsel to protect his legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## COUNT II

### Negligent Violations of the
### Telephone Consumer Protection Act,
### (47.S.C. § 227, *et seq.*)

66.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

67.     Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

68.     Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

69.     As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

**Knowing and/or Willful Violations of the
Telephone Consumer Protection Act,
(47.S.C. § 227, *et seq.*)**

71.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

72.     Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

73.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

74.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

75.     Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT IV

**Defendant's Violations of Nevada's
Deceptive Trade Practices Act
(NRS 598.0918)**

76.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

77.     "Solicitation" means "the act of . . . seeking to obtain" something – in

this case money.  *Solicitation*, <u>Black's Law Dictionary</u> (2d Pocket Ed. 2001).

78.     Here, the Defendant solicited the Plaintiff to seek or obtain money from the Plaintiff.

79.     On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature.  AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

80.     As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers."  *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at <u>http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf</u> (the "AB 337 Minutes").

81.     Further, AB 337 was specifically intended to apply to companies (like the Defendant) using "automatic calling" or automated dialing systems.  As Ms. Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do."  *Id*. at page 4093.

82.     In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing.

83.     Defendant repeatedly and continuously placed telephone calls to the Plaintiff's residential phone (which is also the Plaintiff's cellular phone) to solicit money from the Plaintiff in a manner that would be considered annoying, abusive or harassing by a reasonable person.

84.     Specifically, Defendant placed calls to Plaintiff's cell phone even after the Plaintiff demanded Defendant cease calls to the Plaintiff and advised CBE that she was not the proper debtor.  Such conduct is unquestionably harassing and annoying.

85.     As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls.  Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which the Plaintiff is charged a fee.

86.     Defendant therefore violated NRS 598.0918(2).

87.     Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and the Plaintiff is entitled to relief under NRS 41.600.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendant awarding the Plaintiff:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. § 1692k(a)(1);

5. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A);

6. Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as permitted under NRS 41.600;

7. Punitive damages;

8.  An award of attorney's fees and costs to counsel for Plaintiff; and

9.  Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 16, 2016

Respectfully submitted,

By  /s/ David H. Krieger, Esq.
   _____

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*GRETTA MARSHALL*