IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GRETTA MARSHALL, §<br>   *Plaintiff,* §<br>§<br>v. §<br>§<br>§<br>THE CBE GROUP, INC. §<br>   *Defendant.* § | Civil Action No. 2:16-cv-02406-GMN-NJK |

## DEFENDANT THE CBE GROUP, INC.'S MOTION TO EXCLUDE AND MOTION TO STRIKE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant The CBE Group, Inc. ("CBE"), and its Motion to Exclude the Expert Report and Testimony of Plaintiff's Expert Randall Snyder and Motion to Strike the Declarations of Randall Snyder ("Motion"), and respectively shows unto this Court the following:

### I. INTRODUCTION

1. Plaintiff Gretta Marshall ("Plaintiff") has alleged claims against CBE under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0918 & § 41.600 ("Nevada DTPA"). Doc. 1 at 11-16, ¶¶ 58-87.

2. Pursuant to Rule 26(a)(2) expert disclosure, Plaintiff served CBE with the Declaration of Randall A. Snyder, which included his purported expert testimony, his curriculum vitae, and incorporated several documents that CBE produced during discovery. *See* Exhibit A. Counsel for CBE deposed Snyder on June 8, 2017. Exhibit B. On the last day of discovery, Plaintiff served Snyder's Supplemental Declaration, which incorporated facts from the deposition of Kevin Stark's deposition, a LiveVox corporate representative. Exhibit C at 55; Exhibit F at 6. This Supplemental Declaration came two months after the expert disclosures deadline. Doc. 19 at 2.

3.     Based on the testimony from his deposition and his declarations, Snyder must be excluded and his Original and Supplemental Declarations must be stricken. His testimony repeatedly shows that he is not qualified to offer expert testimony, as he has no relevant knowledge or training on the particular software and systems used in this particular case. Notably, in a case concerning whether an automatic telephone dialing system ("ATDS") was used, he relies on a different, more expansive definition of an ATDS than case law and the TCPA does. Snyder intends to offer expert testimony on a service offered by LiveVox that he had never heard about. His testimony at his deposition shows he cannot offer reliable testimony, and he often makes sweeping conclusory statements without evidence. Because the Supplemental Declaration is untimely, and because Snyder is not qualified to offer expert testimony in this case, Defendant requests this Court exclude the Supplemental Declaration as well as strike the designation of Snyder as an expert witness.

## II. MOTION TO EXCLUDE THE SUPPLEMENTAL DECLARATION OF RANDALL SNYDER

4.     CBE requests that this Court exclude the introduction of the Supplemental Declaration of Randall Snyder (Exhibit C) into evidence under Federal Rule of Civil Procedure 26. The Court granted the parties' stipulation to extend all deadlines set by the Scheduling Order by an additional 90 days. Doc. 19. This set the deadline for expert disclosure on May 20, 2017. *Id.* at 2. Plaintiff then served Snyder's Supplemental Declaration on July 20, 2017. *See* Exhibit F at 6 ("Certificate of Service"). The Supplemental Declaration was two month late.

5.     The Federal Rule of Civil Procedure 26 requires that any additions or changes to information included in an expert report or information given during the expert's testimony must be disclosed by the time the party's pretrial disclosures are due. Fed. R. Civ. P. 26(e)(2). Rule 37 provides for a self-executing sanction, stating in pertinent part, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Ninth Circuit holds that no showing of bad faith, willfulness, or prejudice to the opposing party is required to strike an expert report for failure to supplement before the close of pretrial expert disclosure. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001) (holding no showing of bad faith or willfulness is required); *Torres v. City of Los Angeles,* 548 F.3d 1197, 1213 (9th Cir. 2008) (holding no showing of prejudice is required).

6.     The Supplement Declaration includes a whole new discourse on voice-over-interent-protocol ("VoIP") and session-initiation-protocol signaling ("SIP"). *See* Exhibit C at 12-14, 31-33, 36-41; *cf.* Exhibit B at 10, ¶ 16 (mentioning SIP and VoIP one time each, as background information). While the burden is Plaintiff's to show her late filing was "substantially justified" or "harmless," the fact is it was neither. Snyder did not merely add or correct the information in his initial expert disclosure: he incorporated the Stark deposition testimony to craft a whole new theory.

7.     Crucially, Snyder relies on these SIP arguments and Stark's testimony and to reach a new conclusion in his expert report. Exhibit C at 52-53, ¶¶ 122-28. Plaintiff's last-minute service of Snyder's Supplemental Declaration afforded CBE no opportunity to retain a rebuttal expert in the fields of VoIP or SIP signaling. The TCPA claims in this case turn on whether CBE's equipment is found to be an automatic telephone dialing system ("ATDS"). Plaintiff's tactic of adding a whole new expert opinion at the close of discovery is prejudicial and far from "harmless." Further, Snyder's reason for this late filing, that he saw a need to depose a LiveVox representative, presumably because the testimony of CBE's Rule 30(b)(6) representative was so harmful to Plaintiff's case, is not sufficient. There is no substantial justification, as the true reason for this late

filing is because Plaintiff and Snyder did not diligently pursue the information they sought in discovery. Because Plaintiff's late filing is prejudicial to CBE's right to offer rebuttal expert testimony, and because there is no substantial justification, the Supplemental Declaration must be stricken pursuant to Rules 26 and 37.

### III. MOTION TO STRIKE DESIGNATION OF RANDALL SNYDER AS EXPERT WITNESS

#### A. Standard of Law

8. Trial courts are tasked with the role of "gatekeeper," ensuring all expert opinion testimony or evidence admitted complies with Rule 702 and is "relevant and reliable." *Morrison v. Quest Diagnostics Inc.*, 2:14-cv-01207-RFB-PAL, 2016 WL 3457725, at *2 (D. Nev. 2016) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)). The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Thomas v. Chattanooga*, 398 F.3d 426, 432 (9th Cir. 2005). Expert opinions are inadmissible when based upon speculation and assumptions. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (holding opinion evidence connected to existing data only by an *ipse dixit* of the expert should not be admitted).

9. An expert witness must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Rule 702 lays out the following four required elements of admissibility for expert-witness testimony:

> (1) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) the testimony is based upon sufficient facts or data;
> (3) the testimony is the product of reliable principles and methods; and
> (4) the witness has applied the principles and methods reliably to the facts of the case.

*Id*. "The burden of establishing satisfaction of Rule 702's requirements lies with the offering party." *Smith v. Microsoft Corp.*, 11-cv-1958-JLS-BGS, 2013 WL 6497073, at *3 (S.D. Cal. Dec. 10, 2013) (internal citations omitted).

10.     *Daubert* "provided a list of four non-exclusive factors which a district court *may* consider in the discharge of its gatekeeping duties: (1) whether the theory or technique can be tested; (2) whether it has been subject to peer review and publication; (3) the known or potential error rate of the theory or techniques; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Morrison*, 2016 WL 3457725, at *2 (citing *Daubert*, 509 U.S. at 592-94) (emphasis added); *see also Kuhmo*, 526 U.S. at 141 (holding the trial court "may consider one or more of the more specific factors that *Daubert* mentioned . . . ."). A "trial judge must have considerable leeway in deciding how to determine whether expert testimony in a particular case is reliable." *Kuhmo*, 526 U.S. at 152. Expert testimony that fails to meet the relevancy or reliability criteria must be excluded—even when the exclusion of expert testimony is the deciding factor in determining the outcome of the case. *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998).

11.     "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation omitted). Accordingly, an expert may not testify that a defendant "used an Automatic Telephone Dialing System ('ATDS')" or that the equipment a defendant used to place calls satisfies the TCPA's definition of an ATDS. *See Legg v. Voice Media Group, Inc.*, 13-62044-CIV-COHN, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014) ("Implicit within [the expert's] testimony is [his] conclusion as to the legal definition of an automatic telephone dialing system."); *See Dominguez v. Yahoo, Inc*., 629 Fed. Appx. 369, 373 (3rd Cir. 2015) (expert's

affidavit testimony that the equipment "did not have the capacity to store or produce numbers to be called, using a random or sequential number generator, and to call those numbers," was only a "restating of the statutory definition amount[ing] to nothing more than a legal conclusion couched as a factual assertion"); *Strauss v. CBE Group, Inc*, 15-62026-CIV, 2016 WL 2641965, at *2 (S.D. Fla. Mar. 23, 2016) (finding expert's testimony made improper legal conclusions when he stated "in my expert opinion, the dialing system . . . constitute [sic] an ATDS as contemplated by the TCPA and clarified by the FCC," *inter alia*).

12. Where a subject is a legal matter for the Court's determination, then that is an inappropriate subject for expert testimony. *See Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (citing *Marx v. Diners Club, Inc.,* 550 F.2d 505, 509 (2d Cir. 1977), *cert. denied,* 434 U.S. 861 (1977)). District courts within the Ninth Circuit have excluded testimony when it merely discusses legal principles within the purview of the court's determination of the law. *See, e.g., Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1044 (D. Ariz. 2005) (precluding expert's testimony where he offered legal opinions and discussions on various forms of law, commenting the testimony "reads more like a legal brief than an expert report"); *Microsoft Corp. v. Motorola, Inc.*, C10-1823JLR, 2013 WL 4008822, at *10 (W.D. Wash. Aug. 5, 2013) (excluding lines of testimony discussing legal principles); *Pellegrini v. Gooder*, CV 11-6908-RSWL, 2012 WL 12893745, at *2 (C.D. Cal. Dec. 6, 2012) (excluding testimony where expert applies expert opinion to legal principles).

## IV. ARGUMENTS AND AUTHORITIES

### A. Snyder Is Not Qualified to Be an Expert in This Case.

13. An expert must be qualified by knowledge, skill, experience, training, or education. FRCP 702. The party seeking to exclude expert testimony because the expert is not qualified should show

that the expert does not possess a higher level of knowledge, skill, experience, training, or education tan an ordinary person. FRE 104(a), 702; *Mukhtar v. California State Univ.*, 299 F.3d 1053, 1065 n.9 (9th Cir. 2002). For example, the movant can assert that the expert does not have the practical experience and necessary academic training to support the opinion. *Bogosian v. Mercedes-Benz, Inc.*, 104 F.3d 472, 477 (1st Cir. 1997).

14.     Snyder lacks the knowledge, skill, experience, training, and education necessary to qualify as an expert in this case. Even if Snyder can describe how a phone call works, or how phone calls are connected, that does not mean he is qualified to offer expert testimony on how the specific software in question in this case works.

15.     Snyder lacks the required qualifications to testify as to MCA software used by CBE. He has not reviewed or inspected any physical equipment. Exhibit B at 75:14-18. He cannot point to any experience or knowledge with CBE's MCA software. The cases he has worked on have not involved the MCA software. *Id.* at 93:15-21. All he knew of the software was the public documents from the *Strauss* case, a case which found the MCA was not an ATDS. *Id.* at 94:5-22. He does not have any real experience or education in VoIP technology, programing and coding, all of which are necessary to understand how the MCA system works. Exhibit C at 53-54, ¶¶ 129-30; Exhibit C-A at 5; Exhibit B at 103:9-15. Snyder should not be allowed to testify how a system works when he has never used the system, been trained in the system, analyzed or looked at the system, or even knew that it existed.

16.     Snyder lacks the required qualifications to testify as to the role of LiveVox in this case. He purports to testify how LiveVox works, but he also testified that he "[has not] looked into LiveVox yet" and he has "very little about LiveVox at this point in time." Exhibit B at 51:15-16; 52:3-4. He has never worked for LiveVox, consulted for LiveVox, consulted for a company that used

**DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF EXPERT'S TESTIMONY**                                                             Page **7** of **18**
218.0017 Motion to Exclude Strike Expert (final)

LiveVox, or reviewed LiveVox for a company as part of the its telephony process. *Id.* at 42:15-25. His supposed knowledge of LiveVox comes from publically available documents on the LiveVox website and publically available court documents. *Id.* at 44:1-6; 46:16-22; 50:3-10. Snyder admits that the information from he reviewed LiveVox is material LiveVox uses to market services to "tens of thousands" of people, which is not a competent basis for expert testimony. *Id.* at 46:20-22. He has not had direct communication with LiveVox, either by written correspondence or by phone call. *Id.* at 47:12-25. He has never rendered an opinion on the LiveVox HCI software, which is a similar but distinct to software in question in this case. *Id.* at 50:20-25. He doesn't know how the LiveVox system architect or cloud system is set up, which is a key issue in this case. *Id.* at 52:9-19. His knowledge that all of LiveVox's customers have LiveVox dial the phone numbers for them is not based on any technical or actual knowledge, but rather the assertion that "[t]hey would have no business otherwise." *Id.* at 54:11.

17.    Snyder lacks the qualifications to testify as to how the MCA software and the LiveVox systems used in this case interact. Most importantly for this case, Snyder has no knowledge of a specialized "Fifth Cloud" CBE uses in conjuncture with its MCA. He claimed to have reviewed the LiveVox website, which prominently advertises their Four Clouds,[1] yet he only knew that LiveVox has "two major ones." *Id.* at 70:7.  However, as the testimony of Terry Johnson shows, CBE uses a "Fifth Cloud" service from LiveVox to operate its pass-throughs. Exhibit D. This cloud is not publically advertised and does not appear on LiveVox's website. Snyder admitted that he has no knowledge of the "Fifth Cloud" used for custom programs for LiveVox's customers. *Id.* at 113:5-10. He admitted that he "[does not] know what functionality CBE has contracted with [LiveVox] to take advantage of." *Id.* at 128:21-129:3.

---

[1] *See* http://www.livevox.com

18.     This would not be the first time Snyder has been disqualified as an expert witness because he lacks an adequate factual foundation for his testimony. In *Legg v. Voice Media Group, Inc.*, the court held that Snyder could not offer expert testimony that Voice Media Group was utilizing an ATDS. *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV-COHN, 2014 WL 1767097, at *5 (S.D. Fla. May 2, 2014) In *Legg*, Snyder's testimony was "over 1000 pages of discovery" and a client handbook. *Id*. This is basically the same as what Snyder reviewed in this case. Exhibit A at 4-6; Exhibit C at 4-6. In *Legg*, Snyder did not actually inspect the equipment at issue. *Legg*, 2014 WL 1767097, at *5; Exhibit B at 75:14-18. The court in *Legg* held that relying on just a manual and discovery was an insufficient basis for offering expert opinion, and that Snyder's conclusions were "too attenuated from the underlying materials to be of use, with the gap filled only by Snyder's speculation." *Legg*, 2014 WL 1767097, at *5. *Legg* is instructive in how this Court should view Snyder's proposed testimony in this case. His testimony lacks a sufficient factual basis and is too attenuated to qualify as expert testimony under the Federal Rules of Evidence. This Court should follow the court in *Legg* and not allow Snyder's speculation to masquerade as expert testimony.

19.     Snyder's own testimony shows he is not qualified to testify as the software or systems employed in this instance, including CBE's MCA software or LiveVox's Fifth Cloud service. Snyder did not even know of the Fifth Cloud service, so he can hardly be considered qualified to testify as to it. Whether Snyder can testify as to how a phone call is made is irrelevant to determining whether the specific software used by CBE to make these specific phone calls qualifies under the definition of an ATDS.

### B. Snyder's testimony is unreliable

20.     An expert's opinion must be sufficiently reliable. FRE 702. The purpose of the reliability analysis is to ensure that the expert uses the same level of intellectual rigor as other experts in the

same field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). FRE 702 requires that (1) the expert's testimony be based on sufficient facts or data, (2) the expert's testimony be the product of reliable principles and methods, and (3) the expert apply the principles and methods reliably to the facts of the case. FRE 702(b)-(d); *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002); *Hendrix*, 609 F.3d at 1194.

21. Snyder's testimony is entirely unreliable and rests of baseless assumptions. On top of this, he repeatedly stated that even if he was presented with evidence to the contrary, he would not change his opinion or what he believes happened. Exhibit B at 80:3-21.

22. One clear example of the Snyder's unreliability occurs in his Original Declaration, which presents a significant cause for concern. Before Plaintiff had an opportunity to depose a LiveVox representative, Snyder drew numerous conclusions about CBE's utilization of LiveVox products and services. *See* Exhibit B. When Snyder drew these conclusions, he had nothing to rely on but his own assumptions. Snyder himself admitted he had no basis for making any of these statements. During his deposition, he stated, "As far as I am concerned, the system I analyzed here, the CBE system is not an ATDS." Exhibit A at 100:24-25. When clarifying this statement, Snyder admits, "As far as I know, without having enough evidence about LiveVox, I don't know that numbers are stored there or not until we get that additional evidence, but certainly they're stored at CBE in the account database." *Id*. at 123:9-12. Earlier, Snyder discussed how he lacked key information needed to draw his conclusions:

> Q: Can you tell me what you asked [Plaintiff's counsel] for?
> A: I guess it's—it's an issue of being premature. Apparently there's supposed to be a LiveVox deposition later on, and the disclosure deadline for my report was before that, and I asked for information about LiveVox that is particular to this case.
> Q: What particular information were you seeking?
> A: . . . I would like more information about the LiveVox system that is connected to the CBE manual clicker app.

Exhibit A at 20-21:20-6.  Snyder admits he had no basis for making the statements he made in his Original Declaration, yet he made them anyway.

23.  The fact that Snyder could determine that the MCA was not an ATDS, and that LiveVox dialed numbers with an ATDS for CBE, while never having seen any information about CBE's utilization of LiveVox's products and services, demonstrates he has no methodology for determining whether CBE dialed numbers with an ATDS. He speculated that LiveVox dials numbers on behalf of CBE with an ATDS in his Original Declaration, and he is now again speculating that LiveVox dials numbers with an ATDS in his Supplemental Declaration. His testimony must be based on sufficient facts and data, yet he readily admits that he does not have enough information on the systems.

24.  Another example of Snyder's unreliability is his assumption that, based on the codes contained in the data fields of CBE's call logs, "[i]t is evident that these records were recorded by and produced from the LiveVox automatic telephone dialing system as the 'Dialer' field indicates that the LiveVox dialing system was used to dial the outbound calls and redirect them to call center agents when answered." Exhibit C at 40, ¶ 90. This is statement is based on nothing more than Snyder's speculation. It is true that the call logs from CBE's CRM system contain the code "LiveVox." *See* Exhibit C-H. But this is because CBE utilizes a LiveVox connectivity pass-through. *See* Exhibit E at 50:1-14. Johnson, the Rule 30(b)(6) deponent for CBE and Enterprise Architect in charge of developing the MCA, explained in his deposition that in the "dialer column" in all of CBE's call logs, "currently for all of our calls, it has in it LiveVox." Exhibit E at 169:21-22; *see also* Exhibit C at 5, ¶ 7(o) (Snyder admitting that he reviewed the Johnson deposition).

25.  From a single data field that is auto-populated with the code "LiveVox" (signifying the use of the LiveVox pass-through), Snyder makes the leap of logic that this *proves* CBE uses a LiveVox

ATDS. Snyder's reasoning commits the fallacy of *post hoc ergo propter hoc*: there are many reasons why CBE's call logs may include the term "LiveVox," and the use of an ATDS is not the only one. He states, "I have analyzed the LiveVox [ATDS] in several TCPA cases along with the [call logs] produced by that system." Exhibit C at 34, ¶ 73. Snyder then gives a list of "disposition codes" he purports are generated by LiveVox ATDS's. *See id.* He appears to be incorporating an unauthenticated business record produced by LiveVox from another case; however, he fails to cite where he obtained his list of disposition codes. Therefore, either this list of disposition codes is an unauthenticated business record, and must be stricken under Fed. R. Evid. 901, or it is a hypothetical list of disposition codes, and must be stricken under *Daubert* and *Kuhmo* as confusing to the jury.

26.     He cites to his assumed list of disposition codes to draw several conclusions about CBE's CRM system. Snyder cites to the "call connected" and "not connected" categories as evidence that CBE utilizes "call progress analysis," which he claims is an "inextricable" feature of an ATDS. Exhibit C at 36, ¶ 77; *id.* at 40-41, ¶ 91 (claiming answering party "Hung Up in Opening" in the "Call_Result" field is evidence that calls were made with call progress analysis, therefore by an ATDS). Snyder appears to have failed to note the discussion of this result code in Johnson's deposition, where he states the "Hung Up in Opening" code only denotes that "[CBE's CRM system] did not have enough time to initiate a recording before the person on the other end of the phone hung up, so it is documented as Null or zero." Exhibit E at 167:11-15. Snyder has never even remotely inspected CBE's CRM system, its MCA system, or LiveVox's connectivity pass-through system. Exhibit B at 75:14-19; Exhibit D at ¶ 7. From a generic code auto-populated in a data field, Snyder draws the unsupported conclusion that CBE utilizes an ATDS. This is precisely the sort of testimony that must be stricken under *Daubert* and *Kuhmo*.

27.   We see this again at Paragraph 48 of his Declaration. Snyder begins a discussion of CBE's MCA. <u>Exhibit C</u> at 25, ¶ 48.  Snyder purports to understand the functionality of this software by reviewing the User Manual and Patent Application for the MCA. <u>Exhibit C</u> at 4-5, ¶¶ 7(m), 7(u)-(v); *see also id.* at 26, ¶¶ 49-63 (claiming to understand the MCA due to the requirements of a patent application).  Snyder merely recites incomplete portions of the User Manual and the Patent Application, making passing comments like, "The manual fails to define what criteria is used to determine if a telephone is authorized to be dialed or not," and "the description [of manually dialing and initiating a call] is both inaccurate and misleading." *Id.* at 27, ¶ 53; *id.* at 28, ¶ 57. However, from his passing comments and quotations of the User Manual and Patent Application, Snyder draws conclusions that constitute inadmissible assumptions based on speculation. It is clear that Snyder is not applying any principles and methods reliably to the facts of the case. Snyder's testimony rests on baseless conclusions drawn from incomplete and incorrect knowledge of the facts, and should be stricken as unreliable.

   **C.   Snyder Makes Numerous Inadmissible Conclusions and Statements of Law.**

28.   Not only is Snyder's analysis based on unfounded assumptions and non-sequiturs, it makes numerous conclusions and opinions about the relevant law in the instant case. Where a subject is a legal matter for the Court's determination, then that is an inappropriate subject for expert testimony. *See Aguilar*, 966 F.2d at 447 (internal citations omitted). Therefore, this Court must strike any statement by Snyder that gives a conclusion or statement of law.

29.   This same issue also arose in *Legg*. The court in *Legg* addressed this issue succulently, and properly exclude Snyder's testimony:

> Snyder intends to testify that the systems VMG used to send its text messages meet the legal definition of an automatic telephone dialing system. E.g., DE 66–2 ¶ 31. Implicit within this testimony is Snyder's conclusion as to the legal definition of an automatic telephone dialing system. An expert witness, however, may not offer

legal conclusions; only the Court may instruct the jury as to the state of the law. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.1990). Where an expert offers an opinion as to the legal implications of the facts, that testimony also encroaches on the responsibilities of the judge and jury, and is inadmissible. *Id.; see also Dubiel v. Columbia Hosp. (Palm Beaches)* L.P., No. 04–80283, 2005 U.S. Dist. LEXIS 45874 at *11–14, 2005 WL 5955691 (S.D.Fla. Jan. 10, 2005) (striking expert's testimony that hospital operated in full compliance with Fair Labor Standards Act). Because Snyder may not offer a conclusion as to the legal definition of an automatic telephone dialing system, or the legal implications of VMG's systems in relation to that definition, the Court will exclude his proposed testimony that VMG used an "automatic telephone dialing system" within the meaning of the TCPA. *See Dubiel*, 2005 U.S. Dist. LEXIS 45874 at *12–14; 2005 WL 5955691 *Dow Corning Corp. v. Xiao, No. 11–10008*, 2013 U.S. Dist. LEXIS 35552 at *50, 2013 WL 992773 (E.D. Mich. Mar. 13, 2013) (excluding testimony of expert that materials did not satisfy legal definition of "trade secret" as impermissible legal conclusion).

This Court should follow the court in *Legg* and prevent Snyder from offering any testimony that CBE used an ATDS, as an improper conclusion of law.

        *1.   Snyder repeatedly gives or implies the definition of an ATDS.*

30.    Under TCPA jurisprudence, expert testimony that a defendant "used an Automatic Telephone Dialing System ('ATDS')" constitutes an inadmissible conclusion of law. *See, e.g., Legg*, 2014 WL 1767097, at *4. Further, a court must strike or exclude testimony when, "[i]mplicit within [that] testimony is [the expert's] conclusion as to the legal definition of an automatic telephone dialing system." *Id.* Snyder accuses CBE of using an ATDS (within the meaning of the TCPA) and makes statements implying the definition of an ATDS nearly 100 times in his Declaration. *See* <u>Exhibit C</u>. Snyder either refers to the term "ATDS," or he uses terms like "automatic dialing system," "automatically dialed," *et cetera.* Each of these instances must be stricken pursuant to *Hangarter* and TCPA jurisprudence. Additionally, expert testimony is inadmissible when it makes factual assertions that merely restate the statutory definition of an ATDS. *See Dominguez*, 629 Fed. Appx. at 373 (The "restating of the statutory definition [of an ATDS] amount[s] to nothing more than a legal conclusion couched as a factual assertion . . . .").

Snyder couches the legal definition of an ATDS as a factual assertions in Paragraphs 13 and 129 of Exhibit C, *inter alia*. Therefore, these statements must be stricken pursuant to *Hangarter.*

        2.    *Snyder gives several inadmissible statements of law*.

31.    Snyder makes several statements of law on which he bases his testimony, in some instances failing to cite any authority. District courts within the Ninth Circuit have excluded expert testimony when it merely discusses legal principles within the purview of the court's determination of the law. *See, e.g., Pinal Creek Group*, 352 F. Supp. 2d at 1044. For this reason, the following statements of law must be stricken pursuant to *Pinal Creek*. Snyder states, "I have been informed by Plaintiff's attorneys that the term 'human intervention' applies only to the process of 'dialing' telephone numbers and is not meant to convey any other human agency, interaction or participation in an activity that may be considered a precursor to the process of dialing telephone calls." Exhibit C at 7, ¶ 11. It is unclear to what authority Snyder is citing, if any.

32.    He also states, "It has been explained to me by Plaintiff's counsel that a call is defined as, "an attempt to communicate by telephone" (*Joffe v. Acacia Mortg. Corp.*, 211 Ariz. 325, 326, 121 P.3d 831, 832 (Ct. App. 2005)) or "to communicate with or try to get into communication with a person by telephone. (*Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 948 (9th Cir. 2009).)" Exhibit C at 7, ¶ 12. In Paragraphs 80 to 85, Snyder cites several legal authorities and FCC Declaratory Rulings and Order to establish his definition of an "ATDS." *Id.* at 45-49, ¶¶ 107-12. These are clearly statements of law, and these paragraphs must be stricken pursuant to *Pinal Creek*. Because it is unclear to what extent Snyder relied on the legal definitions of "human intervention," "call," and "ATDS" in reaching his conclusions, his whole Declaration must be held to be inextricably entwined with legal arguments, and therefore must be stricken.

        3.    *Snyder makes up his own elements of what constitutes an ATDS*.

33.     As shown, *supra*, Snyder improperly accuses CBE of using an ATDS, which is an inadmissible legal conclusion. However, Snyder goes even farther, and he reads his own elements the definition of an "ATDS." For instance, he states, "Automatic telephone dialing systems . . . typically fall into several fundamental types of computerized telephone number dialing: *preview* dialing, *progressive* dialing, *predictive* dialing and *unattended message* dialing." Exhibit C at 14, ¶ 28. He does not keep his factual assertions limited to how a predictive dialer can store or produce telephone numbers to be called using a random or sequential number generator. Instead, he crafts a novel way of legally defining an ATDS: by categorizing it as a preview dialer, a progressive dialer, or a predictive dialer. Not only does Snyder make repeated conclusions of law, but, in this instance, he appears to be crafting new law.

34.     He even adds an additional element to the definition of an "ATDS": call progress analysis. *Id.* at 17, ¶ 35. He states, "Both progressive and predictive automatic dialing require the equipment to perform *call progress analysis* for each automatically initiated outbound call." *Id.* He buttresses his new legal definition, stating, "The presence of this function is inherent in the process of automatic dialing and clearly implies the capability of the equipment to automatically dial telephone numbers." *Id.* He capstones his legal definition by stating, "Computerized call progress analysis is inextricably tied to the process of automatic electronic dialing." *Id.* These definitions go beyond how an ATDS is defined in the statute and in case law. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *John Hastings, et al., Plaintiffs v. Triumph Prop. Mgmt. Corp., Defendant. Additional Party Names: Jill Hastings*, No. 216CV00213JADPAL, 2017 WL 388809, at *2 (D. Nev. Jan. 26, 2017) (defining what qualifies as an ATDS). Reading new elements into the definition of an ATDS is clearly improper, and therefore must be stricken.

## V.  CONCLUSION

35.   Snyder is not qualified to give expert testimony in this case, and his Supplemental Declaration is objectionable in form and timing, it does not comply with *Daubert* or *Kuhmo*, and it makes numerous legal conclusions. For the foregoing reasons, he must again be excluded in the instant case, and his Original and Supplemental Declarations must be stricken.

WHEREFORE, PREMISES CONSIDERED, Defendant The CBE Group, Inc., requests this Court grant its Motion in its entirety, exclude Randall Snyder as an expert, strike the Declaration and Supplemental Declaration of Randall Snyder, and for any further relief, at law or equity, so justly entitled.

Respectfully submitted,

**MALONE AKERLY MARTIN PLLC**

*/s/* Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
MALONE AKERLY MARTIN PLLC
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
T: 214-346-2630 | F: 214-346-2631

***COUNSEL FOR THE CBE GROUP, INC.***

## CERTIFICATE OF CONFERENCE

On August 18th, 2017, Defendant's counsel reached out to Plaintiff's counsel by leaving voicemails with Plaintiff's counsel and sending emails to Plaintiff's counsel. Defendant's counsel did not hear back from Plaintiff's counsel, so Defendant assumes that Plaintiff is opposed.

*/s/* Robbie Malone
ROBBIE MALONE

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record **via CM/ECF** on this 18th day of August, 2017.

| | |
|---|---|
| David H. Krieger, Esq.<br>Haines & Krieger, LLC<br>8985 S. Eastern Ave., Suite 350<br>Henderson, NV  89123<br>dkrieger@hainesandkrieger.com | Matthew I. Knepper<br>Miles N. Clark<br>Knepper & Clark, LLC<br>10040 W. Cheyenne Ave. Suite 170-109<br>Las Vegas, NV 89129<br>matthew.knepper@knepperclark.com<br>miles.clark@knepperclark.com |

                 */s/* Robbie Malone
                 ROBBIE MALONE