ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
**MALONE AKERLY MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631
Counsel For Defendant The CBE Group, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| GRETTA MARSHALL, | Case No.: 2:16-cv-02406-GMN-NJK |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT THE CBE GROUP, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| THE CBE GROUP, INC., | |
| Defendant. | |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant The CBE Group, Inc. ("CBE" or "Defendant"), and files its Response to Plaintiff's Motion for Partial Summary Judgment (the "MSJ"), and will respectfully show onto this Court the following:

**I. Introduction**

1. Plaintiff filed her Complaint on October 16, 2016, bringing claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0918 & § 41.600 ("Nevada DTPA"). Doc. 1. Plaintiff bases her claims on telephone calls CBE made to Plaintiff's telephone between August 2015 and December 2015, claiming that Defendant made them with an automatic telephone dialing system ("ATDS"). *Id*.

2. Plaintiff has now filed her Motion for Partial Summary Judgment, seeking judgment only on the issues surrounding the TCPA claim. Doc. 33 at 1-2. Plaintiff's MSJ is based on the testimony of Plaintiff's purported "expert" witness, Randall Snyder.[1] Doc. 33 at 2. Defendant uses a proprietary Manual Clicker Application ("MCA") that requires direct human intervention to make every call, and lacks the capacity to function as an ATDS. Exhibit A. The MCA requires an employee of Defendant to manually initiate a phone call by making a "click" in the MCA. *Id.* It is this act, and nothing else, that initiates the phone call, which happens instantaneously. *Id.* After the employee initiates the call, a system at LiveVox then passes the calls initiated by the employee through the MCA to a public switched telephone network. *Id.*; Exhibit B.

3. Plaintiff claims that "[t]he Snyder does not believe the MCA is an ATDS, but rather that it is connected to an ATDS at LiveVox. Doc. 33 at 6; Exhibit E at 100:24-101:4. However, Snyder has never actually inspected or used the MCA[2] and had never heard of the LiveVox cloud system that the MCA is connected to. Exhibit A ¶ 7; Exhibit E at 52:13-19, 75:18-19. Despite having no real experience or knowledge with the MCA or the LiveVox cloud system it uses, Plaintiff and Snyder believe that he can accurately state how these systems work. Snyder's "expert testimony" is nothing more than speculation.[3] It is not surprising that his "expert testimony" regarding whether a system constitutes an ATDS has been stricken before. *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV-COHN, 2014 WL 1767097, at *5 (S.D. Fla. May 2, 2014) (finding Snyder's conclusions declaring a system an ATDS as "too attenuated from the underlying materials to be of use, with the gap filled only by Snyder's speculation.").[4] Nor was this the only time concerns have been

---

[1] Plaintiff erroneously names her own "expert" Gary Snyder in her MSJ.
[2] In fact, Snyder considers inspecting the equipment he is opining about to be a "useless endeavor."
[3] Snyder's complete lack of qualifications to offer "expert" testimony in this case is more fully explained in Defendant's Motion to Strike Snyder. Doc. 32.
[4] The Court later granted summary judgment to defendant on the ATDS issue, finding that defendant in that case did not employ an ATDS, despite Snyder's contentions. *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1376 (S.D. Fla. 2014).

raised about Snyder's "expert testimony." *See Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 n.6 (E.D. Pa. 2014), *reversed on other grounds*, *Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369 (3rd Cir. 2015) ("Mr. Snyder's Declaration reflects a misunderstanding of the statutory requirements.").[5] The only accurate statements Snyder made was when he correctly stated that the MCA is not an ATDS, and that the LiveVox system is not a predictive dialer. Exhibit E at 100:24-25; 115:4-11. The rest is simply misguided and erroneous speculation. Snyder only serves as an "attempt[] to drag the Court down a rabbit hole" regarding the ATDS issue, when the facts and case law show that no ATDS was used. *Ung v. Universal Acceptance Corp.*, No. 15-127 (RHK/FLN), 2017 U.S. Dist. LEXIS 53720, at *2 (D. Minn. 2017) (holding no ATDS was used when "a live human being was required to place calls.").

4.     This suit is not the first time that the MCA has been challenged as an ATDS. In *Strauss*, the court rightly concluded that the MCA is not an ATDS, nor was the equipment the MCA utilized for pass-through an ATDS. *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d 1302, 1310-11 (S.D. Fla. 2016), *reconsideration denied*, 15-62026-CIV, 2016 WL 4402270 (S.D. Fla. June 8, 2016). Noticeably, Plaintiff does not address this case even once in her MSJ. Nor does Plaintiff address the cases holding that the LiveVox HCI technology—which works in essentially the same manner as Defendant's MCA—is not an ATDS either. *See Pozo v. Stellar Recovery Collection Agency, Inc.*, Case No. 8:15-cv-929-T-AEP, 2016 U.S. Dist. LEXIS 146432, at *10 (M.D. Fla. Sept. 2, 2016). In *Pozo*, the court found that the LiveVox HCI was "almost identical to [the MCA] used in *Strauss*." *Id.* at 10-11. The court went on to hold that LiveVox HCI was not an ATDS because the system "required its representatives to manually dial all calls and was not capable of making any calls without human intervention." *Id.* at 16. The court also rejected an attempt by the

---

[5] On remand, the trial court again discounted Snyder's testimony. *Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2017 U.S. Dist. LEXIS 11346, at *54-61 (E.D. Pa. 2017).

plaintiff to create an issue of fact through the use of an expert witness because the expert had never inspected the LiveVox HCI system, much like how Snyder has never inspected the MCA. *Id.* at 14 ("There is no indication that Parker actually examined the HCI system. Parker's affidavit does not controvert the simple fact that HCI required human intervention to place all calls.").

5. Numerous other courts have agreed that point-and-click styled applications like the MCA that required direct human intervention are not ATDS. *See, e.g.*, *Smith v. Stellar Recovery, Inc.*, No. 15-CV-11717, 2017 WL 1336075, at *6 (E.D. Mich. Feb. 7, 2017), *report and recommendation adopted,* No. 2:15-CV-11717, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017), *reconsideration denied,* No. 2:15-CV-11717, 2017 WL 1362794 (E.D. Mich. Mar. 29, 2017) ("When the HCI system is in use, human intervention—the function of the clicker agents—is clearly required."); *Arora v. Transworld Sys.*, No. 15-cv-4941, 2017 U.S. Dist. LEXIS 135240, at *1 (N.D. Ill. 2017) ("Because all calls from TSI were made with human intervention, and not with an ATDS, Arora's TCPA claim fails as a matter of law."); *Schlusselberg v. Receivables Performance Mgmt., LLC*, No. 15-7572(FLW), 2017 U.S. Dist. LEXIS 100710, at *8 (D.N.J. 2017) ("I find that the inclusion of human operation in the HCI system does not allow the system itself to 'produce telephone numbers to be called, using a random or sequential number generator.'").

6. Plaintiff wants this Court to decide (1) whether CBE initiated phone calls to her cellular phone number, (2) whether CBE's dialing apparatus constitutes an ATDS, and (3) whether Ms. Marshall revoked her consent. Doc. 33 at 1. Because Defendant did not use an ATDS in this case, there cannot be a violation of the TCPA, and deciding any of these issues besides whether Defendant used an ATDS would be immaterial to the TCPA claim. Regardless, Defendant will address each issue. The evidence and case law clearly shows that Defendant did not use an ATDS, and Plaintiff's MSJ should be denied.

## II. Arguments and Authorities

### A. Standard of Law

7.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)). For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

8.  If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex*, 477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248-49.

### B. Defendant did not use an ATDS

9.  Plaintiff's theory of this case is that Defendant's MCA software is not an ATDS, but rather that it works in conjunction with an ATDS employed by LiveVox. Doc. 33 ¶ 6. Plaintiff relies entirely on the unsupported conclusions of Snyder to come to this theory, despite Snyder never inspecting the MCA software nor the LiveVox system. Exhibit A ¶ 7; Exhibit E at 52:13-19, 75:18-19. Plaintiff does not address the fact that the MCA has already been determined not to be an ATDS by a federal court. *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d at 1310-11. Each of Plaintiff's erroneous allegations and conclusions will be addressed in turn.

10. An ATDS system is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers. 47 U.S.C. § 227(a)(1). "A predictive dialer is 'hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers' without human intervention." *Strauss v. CBE Grp., Inc.*, No. 15-62026-CIV, 2016 WL 1273913, at *3 (S.D. Fla. Mar. 28, 2016). The FCC recently held that equipment with the potential to be a predictive dialer could qualify as an ATDS under the TCPA. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015). However, this does not extend to "every piece of malleable and modifiable dialing equipment that conceivably could be considered to have some capacity, however small, to store and dial telephone numbers." *Id*. The key concern is whether it has "the capacity to dial numbers without human intervention." *Id.*; *See McGowan v. Credit Mgmt. LP*, No. 2:14-cv-00759-APG-VCF, 2015 U.S. Dist. LEXIS 129610, at *19 (D. Nev. 2015) ("[G]enuine issues of fact remain regarding whether Credit Management's system uses a predictive dialer and has the capacity to dial telephone numbers from a list without human intervention."). The Ninth Circuit has stated that "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original).

    a. <u>The MCA requires direct human intervention</u>

11. Numerous courts have held that systems and software that require direct human intervention to make a phone call or send a text message do not qualify as an ATDS. *See Strauss*, 173 F. Supp. 3d at 1310-11; *Pozo*, Case No. 8:15-cv-929-T-AEP, *Smith*, 2017 WL 1336075, at *6; *see also See Jenkins v. mGage, LLC*, No. 1:14-CV-2791-WSD, 2016 WL 4263937, at *7 (N.D. Ga. Aug. 12, 2016) (No TCPA violation when "uncontested evidence shows human intervention was required to send each text message"); *Luna v. Shac, LLC*,

122 F. Supp. 3d 936, 941–42 (N.D. Cal. 2015), <u>appeal dismissed</u> (Nov. 20, 2015) (no TCPA violation when "the subject text message was sent as a result of human intervention"); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1376 (S.D. Fla. 2014) (summary judgment not warranted when plaintiff could not "show[] that these broadcasts are transmitted without human intervention"); *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015), appeal dismissed (July 30, 2015) (no TCPA violation when the text messages sent to plaintiff were "a direct response" to actions of a human individual); *Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 985 (D. Minn. 2015) (no TCPA violation when the "technology does not even have the 'capacity to dial numbers without human intervention'").

12.     Thus, if it can be established that the MCA requires direct human intervention, then the MCA cannot be an ATDS. *See, e.g., Estrella v. Ltd Fin. Services, LP*, 8:14-CV-2624-T-27AEP, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015)(finding plaintiff's TCPA claims failed as a matter of law where "the calls were placed manually with the use of human intervention through a 'point and click function'"); *Gaza v. LTD Fin. Services, L.P.*, 8:14-CV-1012-T-30JSS, 2015 WL 5009741, at *4 (M.D. Fla. Aug. 24, 2015)("The record shows that the subject calls were placed manually [as] the agent selected the number to be called and the calls were made as a result of human intervention."); *Modica v. Green Tree Servicing, LLC.*, 14 C 3308, 2015 WL 1943222, at *1 (N.D. Ill. Apr. 29, 2015) (holding that no ATDS was used as a matter of law where "a live calling agent […] was required to initiate a call by telephone by locating the customer's phone number, which is accessed by connecting to the server, and clicking the phone number on his computer"); *Gragg v. Orange Cab Co., Inc.,* 995 F.Supp.2d 1189, 1194 (W.D.Wash.2014) (concluding that the system at issue required human intervention in order to send the text message, because a human physically pressing "accept" was required before the message could be sent).

13.     The MCA works by having an employee of Defendant "click" a button on a computer to initiate a call. <u>Exhibit C</u> at 37:8-21. This places the call instantaneously. *Id.* at 39:1-10. There is no delay and no queuing of the calls. *Id.* If the employee does not make

the "click" then no call is dialed. Contrary to Plaintiff's allegation, the dialing of calls is entirely controlled manually by the MCA. Exhibit C at 196:2-197:5. The MCA then uses a LiveVox system to connect to a public switched telephone network. Exhibit A ¶ 3; Exhibit B ¶ 9. The LiveVox system only functions as a pass-through to the public switched telephone network. Exhibit B. Notably, the LiveVox system does not have any telephone call initiation functionality, which means that it cannot initiate any phone calls on its own. Exhibit B ¶ 8. This is the exact same functionality that the court in *Strauss* found was not an ATDS. *See Strauss*, 173 F. Supp. 3d at 1310-11.

14.   Plaintiff's argument appears to be that requiring a human to click a bullseye to start a phone call is not actually direct human intervention. Doc. 33 ¶ 7. This is a baffling argument where Plaintiff admits that a real live person clicks a button to start a call but simultaneously suggests that this is not direct human intervention. *Id.* Plaintiff attempts to bolster this argument by focusing on the fact that the clicker agent is not usually the collection agent as well. *Id.* This is irrelevant, as nothing requires the person dialing the number to also be the person talking to the consumer. Plaintiff does not cite any authority to support this proposition, as no such requirement or authority exists. As the multitude of cases cited *supra* show, a system that requires human intervention to make every call—as the MCA does—is not an ATDS.

15.   Plaintiff proceeds to rely on Snyder's unsupported legal conclusions as to what the LiveVox system does. Doc. 33 ¶ 8. Snyder thinks that clicking the button loads a number into an ATDS system hosted by LiveVox. *Id.* Of course, Snyder has not inspected either the MCA or the LiveVox system, and had no knowledge of the LiveVox system before this case. Comparatively, as described in the next section, both Kevin Stark ("Stark"), the Director of Product Management for LiveVox, and Terry Johnson ("Johnson"), the Enterprise Architect for Defendant, are extremely familiar with the LiveVox system and the MCA and actually know and understand how the systems works.

16.   Plaintiff has only an unsupported belief that the MCA does not constitute direct human intervention, despite admitting that it requires a person to initiate a call. The other

court that has examined the MCA software held that there was "substantial evidence that human intervention is essential at the point and time that the number is dialed using the MCA." *Strauss*, 173 F. Supp. 3d at 1310-11. The evidence presented in this case clearly shows that each call is initiated by direct human action. Exhibit A; Exhibit B. Thus, the MCA required direct human intervention, and under the multitude of case law citied above, it does not qualify as an ATDS.

        b. The LiveVox system is not an ATDS

17.    Snyder, Plaintiff's purported "expert" witness, admitted that the MCA used by Defendant is not an ATDS. Exhibit E at 100:24-25. Because of this admission, Plaintiff and Snyder chose to make the erroneous argument that the LiveVox system that the MCA connects to is an ATDS. Doc. 33 at 8-11. Plaintiff does this by cherry picking quotes from the deposition of Stark and combining it with Snyder's unsupported conclusions. *Id*. They attempt to rely on Stark's testimony despite the fact that Stark stated he was "not an expert in CBE's MCA application." Exhibit D at 41:23-24. Stark testified that LiveVox was providing "manual dialing solutions that allowed CBE to send calls out to the public switched telephone network, or PTSN." *Id*. at 11:23-24. Efforts to cherry pick the testimony of Stark to find an ATDS that does not exist should be—and have been—rejected in the past. *See Arora*, 2017 U.S. Dist. LEXIS 135240, at *7-8 ("Instead, like the plaintiff in *Stellar*, Arora cherry-picks the testimony of Kevin Stark ('Stark'), Director of Product Management at LiveVox Inc., to build the case that the Human Call Initiator is an ATDS.")

18.    First, Plaintiff misleadingly quotes a portion of the contract between CBE and LiveVox. Doc. 33 ¶ 10. Plaintiff does not bother to quote the part that states the "Application Service" covers "Customer-specific application development." Doc 33-3 at 182. MCA is one such customer-specific application development, as it is a proprietary software used by Defendant. Exhibit A ¶ 2. This contract only shows that LiveVox offers an ATDS as part of its product offerings, not that the MCA or LiveVox product used by Defendant to call Plaintiff is an ATDS. Doc 33-3 at 182. Snyder thinks that LiveVox must dial the calls, otherwise LiveVox would have no business. Exhibit E at 54:10-11. This

conclusion makes no sense. LiveVox, like most other companies, offers more than one product depending on what the customer needs or requires. Just as a car company might sell an SUV to one person and a sedan to another, LiveVox sells different services to different companies. This is a concept that is apparently lost on Plaintiff. In this case, Defendant purchased a connectivity pass-through to the public switched telephone networks, and not any ATDS services from LiveVox.

19. Next, Plaintiff offers a series of steps to show that the LiveVox system uses an ATDS. Doc. 33 ¶ 11. Plaintiff relies on a mixture of the deposition testimony of Stark and Snyder's "expert" report. Even if Plaintiff's version is accurate, it provides no proof of the use of any ATDS. Plaintiff's description does not contain anything about having the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or to dial such numbers. The description contains nothing about algorithms, capacity to autodial, capacity to generate phone numbers, or anything else that would qualify it as an ATDS.

20. Plaintiff next claims that "LiveVox's ACD application . . . controls the dialing of outbound calls. . . ." Doc. 33 ¶ 12. Plaintiff's evidence for this is that Snyder says so, despite Snyder not actually knowing how the system and software works. Snyder in fact testified that the LiveVox system was not a predictive dialer. Exhibit E at 115:4-11. In addition, Stark's testimony shows that Defendant is responsible for launching the phone calls, as he repeatedly stated in his testimony

> "Once CBE launched the outbound call to the number ending in 6717 . . ."
> "In this case, CBE sent a manual dial request to LiveVox, and LiveVox sent it out to the public switch telephone network on their behalf."
> "CBE launches the call, and we pass it through to the public switch telephone network for them"
> "The call is initiated by CBE, not LiveVox"

Exhibit D at 29:6-7; 30:13-15; 31:4-5; 41:9. Additionally, Stark testified that "initiating a call" means to "[t]o pass a single phone call, a single transaction pass through our system out to the PSTN." *Id.* at 38:17:22.

21. This is further supported by the declaration of Kevin Stark. In said Declaration, Stark stated that the LiveVox system used in this case "does not feature telephone call initiation functionality" and that "LiveVox does not initiate any of the calls made by CBE using the MCA and the Technology." Exhibit B at ¶¶ 8-9. Stark further states that the system can only launch calls through manual dial requests, and that the system does not use any algorithms, cannot autodial, does not have the potential to autodial, and does not have the capacity to produce numbers to be called using a random or sequential number generator. *Id*. at ¶¶ 9-17.

22. Plaintiff's contention that LiveVox controls the outgoing calls and selects who receives the call is false, as shown clearly by the testimony of Johnson. Doc 33 at 12. Johnson testified that "When [the clicker agents] initiate the calls, the calls are immediately dialed. There is no delay or queueing or listing or batching." Exhibit C at 48:17-19. Johnson specifically testified that there is no algorithm that determines who gets the call, and its "basically one click/one agent." *Id.* at 48:6-12. The dialing of calls is entirely controlled manually by the MCA. *Id.* at 196:2-197:5. As Johnson testified, "we know if agents are basically logged in and ready to work. And if there are not enough agents there to answer the phone calls, then we don't initiate any phone call." *Id* at 49:11-14. Johnson's testimony shows that the LiveVox system functions essentially the same as a cell phone tower. *Id.* at 37:8-21; 39:1-5; 50:1-14; 52:1-19.  Just like one makes a call on a cell phone, Defendant dials the number and initiates the call through the MCA. *Id*. at 52:1-55:15. Then, just like how your cell phone passes the call through to the cell tower, LiveVox passes the calls dialed and initiated from the MCA to the public switched telephone network and other telephone networks. *Id.*

23. Snyder's contention that the use of an ACD[6] "is precisely how automated predictive dialing and progressive dialing functions operate" is a meaningless statement. Doc. 33 ¶

---

[6] Snyder's "definition" of what an ACD is appears to be based on a blurry screenshot of a webpage that is no longer available. Doc. 33-3 at 171. Nowhere on that page is CBE or the MCA mentioned.

12. It is meaningless because Snyder testified that the LiveVox system was not a predictive dialer. <u>Exhibit E</u> at 115:4-11. This statement is even more meaningless because Plaintiff has not produced any evidence of any algorithm used by the MCA or LiveVox system beyond Snyder's baseless conjecture.

24.  The only thing that matters for this motion is that Defendant did not use an ATDS to call Plaintiff. The MCA cannot function as an ATDS nor does it have the capacity to function as an ATDS. The MCA is not an ATDS, as Johnson, the Enterprise Architect for Defendant, repeatedly testified:

> So if you -- basically the Manual Clicker Application, which, as you'd stated earlier, is a software that is Web based, and as the user manually initiates the phone call by clicking the button, it's very similar to when you make a cellular phone call, that your phone itself can initiate and you manually dial a phone number, but without your cellular network, they can't connect out and then call whatever you're calling. So basically we are reaching through the dialing device. In the case of this, it is LiveVox. And, again, it's not utilizing any predictive algorithm. It's just simply the user clicks it and it places the call.
> [. . .]
> So just to address what you said of the queue, there is no queue or list or holding area or waiting area or waiting room or anything you want to call it. As soon as the user clicks, that call is placed. It's an instantaneous event.
> [. . .]
> So, again, the Manual Clicker App initiates the phone call. LiveVox uses the same thing that your cellular phone company, we'll call it Verizon, uses to connect your phone call that you initially manually dialed to whoever you're dialing. In the case we gave earlier, your mom. And in that case, when we're dialing your mom, without that network to be able to connect that phone call, it wouldn't be possible to place that phone call. So the Manual Clicker App initiates the phone call and then utilizes LiveVox's connectivity with the -- all of the networks -- phone networks of the United States to be able to place those phone calls.
> [. . .]
> Again, the call is initiated and dialed by the MCA. LiveVox does not do any of that. And after the call is initiated and dialed by the Manual Clicker Application, LiveVox simply connects that call to the person that is on the other end of that phone number.
> [. . .]

> It is simply a connectivity or a pass-through to allow you to be able to talk to whoever you're trying to call.

Exhibit 4 at 37:8-21; 39:1-5; 50:1-14; 52:1-19.

25.    Plaintiff's next argument is that LiveVox might make records of the phone calls, and this is somehow evidence of it being an ATDS. Doc. 33 ¶ 13. It has been made clear repeatedly that LiveVox connects the MCA to the public switched telephone network. Exhibit A; Exhibit B. Because LiveVox serves as the pass-through system for the MCA, it is not surprising that the LiveVox system could keep tracking of data related to this purpose, such as start and end times for calls. Plaintiff does not offer any evidence that shows that tracking this information somehow turns the LiveVox system into an ATDS. Likewise, there is no statutory, regulatory, or legal authority stating or suggesting that tracking such information constitutes an ATDS.

26.    Finally, Plaintiff comes to Snyder's grand conclusion. Plaintiff states:

> Mr. Snyder concludes that "the LiveVox system is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or from a list of database of numbers, and to dial such numbers *without human intervention*." Thus LiveVox's system was actually used to initiate automatic cell phone calls to the Plaintiff in this case.

The numerous flaws in Snyder's analysis of systems he has never inspected leads to a flawed conclusion regarding the MCA and the LiveVox system. Like *Stellar* and *Arora*, Plaintiff has cherry picked the testimony of Stark to create a half truth in an attempt to pass it off as proof positive of an ATDS. *See Arora*, 2017 U.S. Dist. LEXIS 135240, at *8. Plaintiff's attempt to window dress this testimony in the form of an "expert" report is not successful.

27.    The same actions that led to Snyder being struck as expert witness in *Legg* is present in this case. In *Legg*, the court stated that "Because Snyder may not offer a conclusion as to the legal definition of an automatic telephone dialing system, or the legal implications of VMG's systems in relation to that definition, the Court will exclude his proposed testimony that VMG used an 'automatic telephone dialing system' within the meaning of

the TCPA." 2014 U.S. Dist. LEXIS 61322, at *13. This is exactly what is happening in Plaintiff's MSJ, where Plaintiff's entire argument as to whether an ATDS was used is based on Snyder's conclusions as it pertains to the legal implications of Defendant's MCA. Doc. 33 at 14. Just like in *Legg*, Snyder's conclusions in this case are "too attenuated from the underlying materials to be of use, with the gap filled only by Snyder's speculation."

28.  In contrast to Snyder's baseless and speculative conjecture, Defendant presents evidence from people that have actually used, analyzed, and designed the software and systems in general. Johnson, the Enterprise Architect for Defendant, has stated in his affidavit that the MCA "does not have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, or to dial such numbers[,]" that the MCA "does not use any predictive algorithms[,]" and the MCA "does not make internal or automatic decisions regarding how many lines to dial nor does it automatically adjust call rates to match agents with calls based upon availability." Exhibit A. This matches what Johnson testified to in his deposition. Exhibit C at 196:14-17. Kevin Stark, Director of Product Management for LiveVox, stated that the "telecommunications technology provided by LiveVox to CBE in connection with calls made using the MCA . . . does not feature telephone call initiation functionality." Exhibit B ¶ 8. Thus, Snyder's contention that it is the LiveVox system making the calls cannot be true, as the LiveVox system is incapable of initiating calls. *Id.* Stark states that "LiveVox does not initiate any of the calls made by CBE using the MCA and the Technology." *Id.* ¶ 9. Finally, he states that the LiveVox system does not use any algorithms, does not have the present capacity to auto-dial, has no features or potential features that could enable auto-dialing, and does not have the capacity to produce or call numbers using a random or sequential number generator. Exhibit B at 11-17. The MCA and the LiveVox system used by Defendant does not have any of the features or potential features to be considered an ATDS.

**C. Calling Snyder an "expert" does not make his opinions correct**

29.  Plaintiff claims that "the Court can look to Mr. Snyder's expert opinion as providing a definitive, and unrefuted, analysis of CBE and LiveVox's integrated system for

placement of automated calls." Doc. 33 at 18. Yet, as repeatedly shown, Snyder's opinion is neither definitive nor unrefuted. It is simply baseless conjecture and fundamental misunderstandings. Plaintiff's entire MSJ relies on Snyder's legal conclusions, which he is not allowed to offer. *Legg*, 2014 U.S. Dist. LEXIS 61322, at *13.

30.     Snyder's testimony has been struck before for being full of speculation, as it is here. *Id.* Even when a court has accepted his testimony, his testimony has been discounted or found immaterial. *See Dobbin v. Wells Fargo Auto Fin., Inc.,* No. 10 C 268, 2011 WL 2446566, at *4 (N.D. Ill. June 14, 2011) ("Snyder's affidavit, however, does not establish a genuine issue of fact regarding whether manually dialed calls made from Wells Fargo call center desk phones are made 'using' equipment with the capacity to autodial within the meaning of the TCPA."). He overstates the statutory requirements of the TCPA and reads new elements into it. *See Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d at 643 n.6 ("Mr. Snyder's Declaration reflects a misunderstanding of the statutory requirements."). Even when courts have considered his testimony, they do not, and cannot, consider the legal conclusions he makes, such as in this case where he repeatedly declares the LiveVox system to be an ATDS. *See Johnson v. Yahoo!, Inc.,* No. 14 CV 2028, 2014 WL 7005102, at *5 (N.D. Ill. Dec. 11, 2014) ("Yahoo! also complains that Snyder's expert opinions are legal opinions in disguise. . . . I agree with Yahoo! and thus consider Snyder's opinions only with regard to the facts of storage, and not as to whether the numbers are stored long enough to implicate the [TCPA].").

31.     Calling Snyder an "expert" does not absolve the numerous problems in his report or his opinions. Snyder's "expert" testimony is directly rebutted by people that are far more knowledgeable of the MCA and the LiveVox system. This Court should ignore Snyder's faulty testimony and not consider the numerous legal conclusions shoehorned into his "expert" opinion.

### D. The other findings Plaintiff seeks are red herrings

32.  First, Plaintiff wants this court to rule the calls were made for non-emergency purposes. This is immaterial, as without the use of an ATDS, it does not matter why the calls were made. Doc. 33 at 14.

33.  Next, Plaintiff wants a ruling that Plaintiff never provided her consent, and that if she did, she revoked it. It is important to remember that Plaintiff has only sought summary judgment on her TCPA claims. Consent is a defense to a TCPA claim. *See Aderhold v. car2go N.A., LLC*, No. C13-489RAJ, 2014 U.S. Dist. LEXIS 26320, at *7 (W.D. Wash. 2014); 47 U.S.C. § 227(b).

34.  As Plaintiff's deposition shows, Plaintiff is unsure whether she ever had an account with DirecTV. Doc. 33 at 4, ¶ 2. If she did, it's possible that she gave her consent to be called through the service agreement with DirecTV. Thus, as a minimum, there is an issue of fact of whether she ever gave consent. There is also a fact issue as to whether Plaintiff ever revoked any consent that was given. The only potential time she clearly revoked her consent was when she was mistakenly told they Defendant was calling for someone else. Doc. 39-1 at 3. The times when she knew they were calling for her, she never revoked her consent, only stated that she would block them. *Id*. At the minimum, there are fact issues regarding consent.

35.  However, this issue of consent and revoking consent is another red herring from Plaintiff. Plaintiff has no evidence that Defendant used an ATDS, and Defendant has presented overwhelming evidence that the MCA software and the LiveVox system is not an ATDS. Because Plaintiff cannot show that an ATDS was used to make the calls, the issue of consent is moot. Likewise, it is improper to even consider damages when Plaintiff has failed to show that an ATDS was used to make the calls.

36.     Plaintiff cannot show that an ATDS was used to make any calls to Plaintiff. This is because the MCA and the LiveVox system are not an ATDS. Without an ATDS, none of the other issues raised in Plaintiff's MSJ are of concern, and can be safely ignored.[7]

### III. Conclusion

37.     Plaintiff has not presented any actual proof that the MCA or the LiveVox system is an ATDS as defined by statutes, regulations, or case law. The court that considered the MCA already found it to not be an ATDS, a case which Plaintiff has conveniently ignored. Several other courts that have considered other point-and-click styled applications like the MCA have found them to not be ATDS either. The overwhelming amount of case law on this issue that supports the fact that the MCA is not an ATDS were not even acknowledged by Plaintiff. Instead of recognizing the established case law on this issue, Plaintiff attempts to rely on the faulty conclusions of her "expert" Snyder. Snyder offered nothing but baseless legal conclusions regarding the MCA. This is not sufficient to prevail on summary judgment. Because Plaintiff has no actual evidence of an ATDS being used to call her, her motion for summary judgment should be denied.

WHEREFORE, PREMISES CONSIDERED, Defendant The CBE Group, Inc., respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment.

[SIGNATURE BLOCK ON NEXT PAGE]

---

[7] Plaintiff has not sought summary judgment on her FDCPA issue, and so Defendant has not addressed it in this Response. Defendant did address the FDCPA issue in Defendant's Motion for Summary Judgment.

Respectfully submitted,

**MALONE AKERLY MARTIN PLLC**

*/s/* Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
**MALONE AKERLY MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT
THE CBE GROUP, INC.***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record **via CM/ECF** on this 8th day of September, 2017.

| | |
|---|---|
| David H. Krieger, Esq.<br>Haines & Krieger, LLC<br>8985 S. Eastern Ave., Suite 350<br>Henderson, NV  89123<br>dkrieger@hainesandkrieger.com | Matthew I. Knepper<br>Miles N. Clark<br>Knepper & Clark, LLC<br>10040 W. Cheyenne Ave. Suite 170-109<br>Las Vegas, NV 89129<br>matthew.knepper@knepperclark.com<br>miles.clark@knepperclark.com |

   */s/* Robbie Malone
     ROBBIE MALONE